IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ESTHER H.,[1]

                Plaintiff,

       v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

Case No. 1:24-cv-01054-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

       Esther H. ("Plaintiff") filed this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her application for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act. The Court has jurisdiction over this appeal pursuant

to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the

Commissioner's decision and remands for the calculation and payment of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party and lay witness.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

///

# BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was born in May 1969, making her fifty-one years old on her application date.[2] (Tr. 24, 215.) Plaintiff has at least a high school education, but no past relevant work experience. (*Id*. at 24.) In her application, Plaintiff alleged disability due to chronic pain in her neck, mid-back, and lower back, osteoarthritis, and a bulging disc in her neck. (*Id*. at 217.) Plaintiff also alleged chronic pain, weakness, fatigue, mobility difficulties, and environmental sensitivities due to fibromyalgia. (*Id*. at 257.)

The Commissioner denied Plaintiff's application initially and upon reconsideration. (*Id*. at 122-35.) Plaintiff and an impartial vocational expert ("VE") appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on March 15, 2023. (*Id*. at 34-52.) On May 1, 2023, the ALJ issued a written decision denying Plaintiff's application. (*Id*. at 17-26.) On May 1, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id*. at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which [s]he filed h[er] application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted).

Security Act." *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those

five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the impairment meets or equals a listed

impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the

claimant can perform other work that exists in significant numbers in the national economy. *Id.*

at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v.

Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any

of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of

proof at step five, where the Commissioner must show the claimant can perform other work that

exists in significant numbers in the national economy, "taking into consideration the claimant's

residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d

1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is

disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is

disabled. (Tr. 17-26.) At step one, the ALJ determined that Plaintiff had not engaged in

substantial gainful activity since December 29, 2020, the application date. (*Id.* at 20.) At step

two, the ALJ found that Plaintiff suffered from the following severe, medically determinable

impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine, cervical spine

osteoarthritis, status post left rotator cuff repair, trochanteric bursitis of the left hip, fibromyalgia,

depression, and anxiety. (*Id.*)

At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or

medically equals a listed impairment. (*Id.*) The ALJ then concluded that Plaintiff had the residual

functional capacity ("RFC") to perform light work, subject to these limitations: (1) can perform tasks involving up to six hours of sitting, and up to six hours of standing/walking, in an eight-hour workday with normal breaks, (2) can push, pull, lift, and carry up to twenty pounds occasionally, and up to ten pounds frequently, (3) can occasionally reach overhead bilaterally and in all other directions frequently, (4) can occasionally climb ramps or stairs, but can never climb ladders, ropes, or scaffolds, (5) can occasionally stoop, kneel, crouch, or crawl, (6) must avoid exposure to workplace hazards, including unprotected heights and moving mechanical parts, and (7) can understand, remember, and carry out simple, routine tasks involving simple work-related decisions. (*Id*. at 21.) The ALJ also opined that Plaintiff can occasionally interact with supervisors, co-workers, or the public and that her time off task (in addition to normal breaks) is five percent of the time in an eight-hour workday. (*Id*.)

At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (*Id*. at 24.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a merchandise marker, collator operator, and router. (*Id*. at 25.)

## DISCUSSION

Plaintiff raises three primary arguments on appeal. First, Plaintiff argues that the ALJ failed to identify specific, clear, and convincing reasons supported by substantial evidence in the record to discount Plaintiff's symptom testimony. (Pl.'s Opening Br. ("Pl.'s Br.") at 8-15, ECF No. 9.) Second, Plaintiff argues that the ALJ improperly evaluated the persuasiveness of the medical opinion of Wendell Heidinger, M.D. ("Dr. Heidinger"). (*Id*. at 3-8.) Third, Plaintiff argues that the ALJ erred by dismissing the lay testimony of Plaintiff's partner, Mike F. (*Id*. at 15-16.)

///

For the reasons discussed below, the Court reverses the Commissioner's decision and remands for the calculation and payment of benefits.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 22, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ did not meet that standard here.

///

///

### 1.    Plaintiff's Testimony

At the hearing, Plaintiff testified that she is unable to work due to widespread pain spreading from the top of her spine to the bottom, down her left leg, and down both of her arms. (Tr. 40.) Plaintiff also suffers from back pain, morning stiffness, fatigue, and fibromyalgia. (*Id.* at 41-44.) Plaintiff testified that it takes her three to four hours to get out of bed due to pain and morning stiffness. (*Id.* at 41.) She cannot lift more than five pounds, stand more than fifteen minutes, and would likely need to lie down for at least three hours in an eight-hour workday. (*Id.* at 42.) Plaintiff's medications make her tired and cause "brain fog." (*Id.* at 40-41.)

In her function report, Plaintiff indicated that she cares for her cat, shops once a week, cooks once a month, reads, and watches movies. (*Id.* at 267, 269-71.) Plaintiff also explained in her function report that her pain stems from injuries she suffered in seven previous car accidents, and "standing, sitting, [or] laying down for more than [fifteen] minutes at a time []causes severe pain." (*Id.* at 266.)

### 2.    The ALJ's Findings

The ALJ discounted Plaintiff's testimony about the intensity, persistence, and limiting effect of her symptoms based on Plaintiff's improvement with treatment and inconsistencies with the objective medical record. (*Id*. at 22-24.) The ALJ cited medical records corroborating Plaintiff's complaints, but nevertheless highlighted records suggesting that Plaintiff could "work[] through her chronic pain symptoms." (*Id*. at 23, further noting that Plaintiff "was still able to ambulate without an assistive device[.]")

### 3.    Improvement with Treatment

Plaintiff argues that the record fails to document sustained improvement in her symptoms, and that the evidence the ALJ cited in his decision does not provide a clear and convincing reason supported by substantial evidence to discount Plaintiff's testimony. (Pl.'s Br.

PAGE 7 – OPINION AND ORDER

at 10-12.) The Commissioner responds that the ALJ properly considered Plaintiff's testimony, including her fibromyalgia, and included appropriate limitations in Plaintiff's RFC. (Def.'s Br. at 7-9, ECF No. 11.)

### a.    Applicable Law

It is well settled that an ALJ may discount a claimant's testimony based on evidence that her symptoms improved with treatment. For example, in *Burkett v. Saul*, 806 F. App'x 509, 512 (9th Cir. 2020), the Ninth Circuit held that the ALJ provided clear and convincing reasons for discounting the claimant's symptom testimony, and in doing so, noted that the ALJ appropriately found that the claimant's testimony was inconsistent with "record evidence that her kidney disease had improved, record evidence that her hypertension was under control, and record evidence that her depression [was] well controlled (when on medication regularly)." *Id.* (simplified); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (explaining that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits").

Similarly, in *Fletcher-Silvas v. Saul*, 791 F. App'x 647, 649 (9th Cir. 2019), the Ninth Circuit held that the ALJ provided clear and convincing reasons for discounting the claimant's testimony regarding her limitations. *Id.* The Ninth Circuit noted that the ALJ appropriately found that the claimant's testimony that "her left leg improved only slightly and her right leg did not really improve following her knee replacement surgeries . . . conflicted with [her] self-reports to treatment providers and with the objective indicia of improvement in her medical record." *Id.*; *see also Darling v. Kijakazi*, No. 22-35594, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023) (holding that the ALJ provided clear and convincing reasons to discount the claimant's subjective symptom testimony, including "treatment efficacy[] and longitudinal improvement"); *Walker v. Kijakazi*, No. 22-35351, 2023 WL 3017946, at *1 (9th Cir. Apr. 20, 2023) (holding

that substantial evidence supported that the claimant's "pain improved after treatment and medication"); *Torres v. Saul*, 798 F. App'x 979, 981 (9th Cir. 2019) ("The [ALJ] proffered specific, clear, and convincing reasons for discounting [claimant's] pain and limitations testimony because the record showed that [her] conditions improved with treatment and were less severe than alleged.").

> **b.    Disposition**

The record demonstrates that the ALJ erred in discounting Plaintiff's testimony based on evidence that her symptoms improved with treatment.

Before making specific findings, the ALJ included the following boilerplate language often found in disability determinations: "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 22.) This language alone does not meet the Ninth Circuit's specificity requirements. *See Finney v. Kijakazi*, No. 22-15143, 2022 WL 17830000, at *1 n.1 (9th Cir. Dec. 21, 2022) ("The ALJ . . . made use of boilerplate language stating that [the plaintiff's] statements are 'not entirely consistent with the medical evidence and other evidence in the record.' This boilerplate explanation is insufficiently specific.") (citation omitted). The ALJ did not rely solely on this boilerplate language, but also cited a few examples of Plaintiff's symptom improvement with chiropractic care. (Tr. 23.) Nevertheless, the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, particularly regarding her fibromyalgia.

For example, the ALJ stated that "[Plaintiff] estimated that her pain symptoms had improved [sixty]-[seventy-five percent] thanks to chiropractic adjustments—but that her symptoms worsened in the absence of such treatments." (*Id.*, citing *id.* at 590.) The ALJ also cited Plaintiff's confirmation "to her chiropractor in August 2021 that her back and neck

symptoms had improved [twenty-five]-[thirty percent]." (*Id.*, citing *id.* at 736.) Finally, the ALJ relied on subsequent chiropractic notes documenting Plaintiff's subjective reports of "measurable improvement in her symptoms." (*Id.*, citing *id.* at 740, 742-43, 746, 754.)

First, as Plaintiff highlighted in her brief, the reported improvement rate of sixty to seventy-five percent was a mischaracterization of the record. (*See* Pl.'s Br. at 11.) The treatment note in question reflects that Plaintiff experienced improvement in her neck and back pain with a rate of up to seventy-five percent *in the past*, but such relief was only temporary and was the original reason for the referral. (*See* Tr. 781, "Her pain is consistently at [seven out of ten], although she does get temporary improvement in her pain level from treatment"; *see also id.* at 771, "Percent improvement is reported to be [ten percent] for [three] days after treatment.")

Furthermore, the ALJ's citations to the record did not directly address Plaintiff's fibromyalgia. (*Id.* at 22-23.) Although the record supports a finding that chiropractic care relieved Plaintiff's musculoskeletal symptoms temporarily from 2021-2023, her symptoms related to fibromyalgia persisted and she was eventually referred to a rheumatologist and diagnosed with fibromyalgia in 2023. (*Id.* at 786.)

Based on its review of the record as a whole, the Court concludes that substantial evidence does not support the ALJ's discounting of Plaintiff's symptom testimony based on evidence of improvement and effective treatment. Thus, the Court finds that the ALJ erred in relying on these reasons to discount Plaintiff's subjective symptom claims. *See Garrison*, 759 F.3d at 1015 (holding that the ALJ improperly cited effective treatment as a reason to discount the plaintiff's pain testimony where the treatment provided only partial and temporary relief); *Angela V. v. Comm'r, Soc. Sec. Admin.*, No. 6:19-cv-0836-HZ, 2021 WL 1565788, at *5 (D. Or. Apr. 20, 2021) (holding that the ALJ erred in rejecting the plaintiff's symptom testimony related

to her fibromyalgia where the ALJ "isolat[ed] a few examples of symptom improvement and ignor[ed] the many others that indicated continued, severe impairment") (simplified) (citation omitted); *Tamara B. v. Comm'r of Soc. Sec.*, No. 318CV05219JCCTLF, 2019 WL 2563850, at *4 (W.D. Wash. Apr. 8, 2019) ("[B]ecause fibromyalgia symptoms may wax and wane, . . . intermittent improvement does not support discrediting pain testimony." (citing *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017))), *report and recommendation adopted*, 2019 WL 1922806 (W.D. Wash. Apr. 30, 2019).

### 4.    Inconsistency with Objective Medical Evidence

Plaintiff argues that the ALJ also failed to provide clear and convincing reasons supported by substantial evidence for discounting her testimony based on conflicting objective medical evidence. (Pl.'s Br. at 12-14.) The Commissioner argues that the ALJ addressed Plaintiff's fibromyalgia, acknowledged that Plaintiff was not "pain-free," and incorporated appropriate limitations in Plaintiff's RFC. (Def.'s Br. at 7-9.)

### a.    Applicable Law

"[T]he ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)); *see also McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020) (noting that "inconsistencies with objective medical evidence . . . cannot provide the sole basis for an ALJ's credibility determination") (citations omitted); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that even "[a]ssuming that [the plaintiff's] testimony regarding her physical impairments was not supported by the objective medical evidence, the ALJ cannot properly rely on that as the sole reason to discredit her testimony" (citing *Burch*, 400 F.3d at 681)).

b.    **Disposition**

Having found that the ALJ erred by discounting Plaintiff's symptom testimony based on her improvement with treatment, the ALJ may not rely on a lack of objective medical evidence as the only reason to discount her testimony.[3] *See Valdez*, 746 F. App'x at 677 ("[T]he ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" (citing *Burch*, 400 F.3d at 680)); *see also McClaren*, 812 F. App'x at 501 (same); *Taylor*, 720 F. App'x at 907 (same).

Even if a lack of objective medical evidence could stand alone as a reason to discount Plaintiff's testimony, the ALJ summarized Plaintiff's medical records but never explained how those records undermined her testimony regarding her fibromyalgia symptoms. (Tr. 23.) It is well settled than an ALJ must "specifically identify the testimony from a claimant [the ALJ] finds not to be credible and . . . explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (simplified); *see also Brown-Hunter*, 806 F.3d at 489 (noting that the ALJ must "specify which testimony [the ALJ] finds not credible"). This specificity requirement is not satisfied where the ALJ does not connect the medical evidence to

---

[3] The Commissioner argues that the ALJ also cited Plaintiff's activities of daily living as a reason to discount her symptom testimony. (*See* Def.'s Br. at 8.) The ALJ's only reference to Plaintiff's activities was a reference to "exercising daily." (Tr. 23.) The ALJ cited Exhibit B6F at page two in support of Plaintiff's daily exercise (*id.*), but the cited progress notes do not include a reference to exercise. The ALJ may have been referring to Exhibit B3F at page two, which reflects a provider's note stating "EXERCISE: Yes" and "Qty: Daily" (*id.* at 541), but that note provides no detail about the type of exercise in which Plaintiff was engaged. Several other progress notes reflect that providers recommended therapeutic daily physical therapy "exercises" for Plaintiff to complete at home. (*See, e.g., id.* at 353, 394, 401, 621, 675, 680-81, 683, 711, 717, 723.) In light of this record, the Court finds that a vague reference to daily exercise in the context of Plaintiff's documented home physical therapy "exercises" is not a clear and convincing reason to discount her pain symptom testimony. *See, e.g., Caryn T. v. Kijakazi*, No. 20-cv-06138-KAW, 2022 WL 17968842, at *3 (N.D. Cal. Sept. 29, 2022) (holding that the ALJ erred by discounting the plaintiff's symptom testimony based on her exercise where the plaintiff "exercised at the gym regularly," but the exercise "was her physical therapy for her hypermobility syndrome").

any particular symptom testimony. *See id.* at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."). Here, the ALJ erred by failing to "identify the testimony [he] found not credible" and then "link that testimony to the particular parts of the record supporting [his] non-credibility determination." *Id.*

Even if the ALJ had satisfied the specificity requirement, the ALJ's reasons for discounting Plaintiff's testimony were not supported by clear and convincing evidence in light of Plaintiff's fibromyalgia. The ALJ acknowledged that Plaintiff was not pain-free and that "recent treatment notes established all [eighteen] fibromyalgia trigger points[,]" but nevertheless concluded that the record shows that Plaintiff "has been successful in working through her chronic pain symptoms." (Tr. 23, citing *id.* at 785.) To support this conclusion, the ALJ relied on February 2023 rheumatology clinic notes reflecting that Plaintiff "presented as 'well appearing' and in no distress with normal mood and affect." (Tr. 23, citing *id.* at 785.) The ALJ also relied on treatment notes showing that Plaintiff's "clinical presentation was benign" and that she presented in "no acute distress, alert and fully oriented with no swelling or neurological deficits." (*Id.*, citing *id.* at 662.)

Despite Plaintiff's appearance at her appointments, she alleged disability due in large part to fibromyalgia. (*See id.* at 20, listing fibromyalgia as one of Plaintiff's severe impairments; *see also id.* at 785-86, a complete soft tissue exam and all fibromyalgia tender points were positive). The objective medical evidence on which the ALJ relied is not inconsistent with debilitating fibromyalgia. *See, e.g.*, *Revels*, 874 F.3d at 666 (stating that normal imaging results and unremarkable physical examinations are "perfectly consistent with debilitating fibromyalgia," and noting that fibromyalgia is "diagnosed 'entirely on the basis of patients' reports of pain and

other symptoms,' and 'there are no laboratory tests to confirm the diagnosis'") (citation omitted);

*Nunn v. Berryhill*, No. 6:17-cv-00203-SB, 2018 WL 2244705, at *12 (D. Or. May 16, 2018)

(explaining that fibromyalgia can be "confirmed as a severe impairment without objective

testing" and that "persons suffering from fibromyalgia 'manifest normal muscle strength and

neurological reactions and have a full range of motion'") (citation omitted).

    For these reasons, the Court finds that the ALJ erred in discounting Plaintiff's testimony

as inconsistent with objective medical evidence. *See id.* (explaining that an ALJ commits

reversible error by failing to evaluate the medical evidence "in light of fibromyalgia's unique

symptoms and diagnostic methods" and by failing to consider symptom testimony in light of a

fibromyalgia diagnosis (quoting *Revels*, 874 F.3d at 662-66)); *Rita L.S. v. Comm'r of Soc. Sec.

Admin.*, No. 16-cv-01981-MC, 2018 WL 4361039, at *5-6 (D. Or. Sept. 13, 2018) (noting that

the ALJ discounted the claimant's testimony based on conflicting objective medical evidence,

including unremarkable examination results, and that courts in this district "have been especially

reluctant to rely on a lack of objective medical evidence when considering fibromyalgia cases,"

and therefore rejecting the ALJ's reliance on conflicting objective medical evidence).

## II.    MEDICAL OPINION EVIDENCE

    Plaintiff also argues that substantial evidence does not support the ALJ's explanation for

discounting the opinion of Dr. Heidinger, Plaintiff's primary care physician. (Pl.'s Br. at 3-8.)

The Court agrees.

### A.    Applicable Law

    "In January 2017, the Social Security Administration issued revised regulations for

evaluating medical opinions relating to claims filed on or after March 27, 2017." *Cross v.

O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citation omitted). The revised "regulations

provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical

opinion." *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b))).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an "ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations

mandate discussion of these other factors." *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

### B.     Analysis

The Court concludes that substantial evidence does not support the ALJ's evaluation of Dr. Heidinger's opinion.

Dr. Heidinger treated Plaintiff for her conditions beginning on March 29, 2021. (*See* Tr. 792.) On March 28, 2023, Dr. Heidinger completed a treating source statement, diagnosing Plaintiff with fibromyalgia, insomnia, depression, and back pain. (*Id.*) He opined that Plaintiff's fibromyalgia would be a "lifelong" medical condition. (*Id.*) Dr. Heidinger described Plaintiff's symptoms as chronic pain in her upper and lower back and in her left hip, along with depression and fatigue. (*See id.* at 793.) Dr. Heidinger stated that Plaintiff would need to lie down or rest "up to [two] hours a day, secondary to pain and fatigue[.]" (*Id.*) Dr. Heidinger also opined that Plaintiff would be off-task twenty-five percent or more during a typical workday and would miss more than four days per month due to her impairments. (*See id.* at 796.)

The ALJ found Dr. Heidinger's opinion "not persuasive." (Tr. 24.) The ALJ explained that Dr. Heidinger's opinion was "not consistent with [his] own clinical notes from early 2023[,]" which indicated that Plaintiff had "full range of motion despite back tenderness, and that she remained alert, oriented, and in no distress." (*Id.*, citing *id.* at 667.) The ALJ further explained that the "other medical evidence cited above also undermines Dr. Heidinger's functional assessment, as [Plaintiff] exhibited no deficits in strength or mobility that would justify such severe limitations." (*Id*. at 24.)

Plaintiff first argues that the ALJ's discussion of Plaintiff's examination findings fail to address the unique characteristics of fibromyalgia, and that "the evidence [the ALJ] cited is not even relevant to fibromyalgia." (Pl.'s Br. at 5.) Plaintiff also argues that the ALJ erred in selectively relying on certain "objective" examination findings to reject Dr. Heidinger's opinion, effectively requiring objective evidence of a condition that "eludes such measurement." (*Id*. at 6, citing *Revels*, 874 F.3d at 657.) The Commissioner responds that the ALJ appropriately found that the record did not support restrictions to the extent Dr. Heidinger opined. (*See* Def.'s Br. at 3-6.) The Court finds that substantial evidence does not support the ALJ's opinion.

Plaintiff argues that the single chart note on which the ALJ relied was an impermissible "cherry-picking" of the record and does not accurately reflect Dr. Heidinger's observations of Plaintiff over the full treatment period. (Pl.'s Br. at 6.) Dr. Heidinger's notes revealed "tenderness to the left lumbar paraspinal muscles, left lumbar facets, left greater than right [sacroiliac] joints, and groin." (*Id.*, citing Tr. 622, 667.) Dr. Heidinger also noted that Plaintiff's radicular pain of her lumbosacral region was under "poor control" and increased her dose of pain medication. (Tr. 637.) Dr. Heidinger noted throughout the treatment period that Plaintiff had left-sided pain that radiated down the left leg to the knee and sometimes to the middle toe. (*Id.*, citing

*id.* at 621, 635.) Plaintiff notes that Dr. Heidinger referred her for several diagnostic studies, including an x-ray of the sacroiliac joints, which demonstrated mild bilateral joint degenerative changes. (*See* Pl.'s Br. at 6, citing Tr. 623.) Plaintiff's x-ray of her thoracic spine showed mild to moderate multilevel degenerative changes. (*Id.*, citing Tr. 624.) Dr. Heidinger then referred Plaintiff to a rheumatologist (Tr. 667), who concluded that Plaintiff met the criteria for a fibromyalgia diagnosis with eighteen out of eighteen trigger points. (*Id.*, citing *id.* at 785-86.) At a follow-up appointment, Dr. Heidinger opined that Plaintiff's fibromyalgia was under poor control even after treatment with the rheumatologist, and noted Plaintiff's desire to try a new treatment method for relief. (*Id.* at 801.)

The Court agrees that, considering the record as a whole, the single chart note indicating Plaintiff's full range of motion and presentation as alert with no distress alongside the ALJ's unspecified reference to "other medical evidence cited above" (*id.* at 24) does not constitute substantial evidence to discount Dr. Heidinger's opinion. *See, e.g.*, *Robbins v. Comm'r of Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (holding that a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence" (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989))); *see also Adeena W. v. Saul*, No. 6:19-cv-00051-SB, 2020 WL 2992191, at *5 (D. Or. June 4, 2020) (explaining that an ALJ cannot "cherry-pick" from the record to support findings while ignoring evidence that contradicts those findings). This is consistent with the Court's conclusion above that the ALJ failed properly to consider the medical evidence in light of Plaintiff's fibromyalgia, which as previously discussed, often presents with normal imaging results and unremarkable physical examinations. *See Revels*, 874 F.3d at 666 (finding that normal imaging results and unremarkable physical examinations are "perfectly consistent with debilitating fibromyalgia").

For these reasons, the Court finds that the ALJ's reasons for discounting Dr. Heidinger's opinion were not supported by substantial evidence.

## III.    LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ erred by discounting her partner's lay witness testimony. (Pl.'s Br. at 15-16.) The Commissioner argues that the ALJ properly addressed the lay witness testimony. (Def.'s Br. at 10-11.)

### A.    Applicable Law

It remains "unsettled whether an ALJ is still required to consider lay witness evidence under the revised regulations." *Apple v. Bisignano*, No. 24-307, 2025 WL 1525314, at *3 (9th Cir. May 29, 2025) (quoting *Crummett v. King*, No. 23-3668, 2025 WL 470890, at *2 (9th Cir. Feb. 12, 2025)); *see also Wilson v. O'Malley*, No. 23-35463, 2024 WL 2103268, at *2 (9th Cir. May 10, 2024) (recognizing that the Ninth Circuit has "not yet addressed whether an ALJ is required to provide germane reasons for discounting lay witnesses under the new regulations"). "[A]ssuming that an ALJ must consider such evidence, '[a]n ALJ need only give germane reasons for discrediting the testimony of lay witnesses.'" *Apple*, 2025 WL 1525314, at *3 (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)).

### B.    Analysis

The Court finds that if the ALJ was required to provide germane reasons for rejecting the lay witness testimony, the ALJ failed to do so here.

Plaintiff's partner, Mike F., reported that Plaintiff experiences constant pain, whether she is driving, doing the dishes, walking, or sitting. (Tr. 324.) He also stated that Plaintiff cannot sit or stand without pain, and that he helps her with all things "physical[,]" whether it be walking behind her going up the stairs or helping her into the shower. (*Id.*) He concluded that her

condition had deteriorated over the years, and that she used to be "a very healthy person" but now struggles with "anything physical." (*Id*.)

The ALJ reviewed Mike F.'s lay witness testimony and summarized it as reflecting that Plaintiff "sometimes spends the day in bed due to extreme pain." (*Id*. at 24.) The ALJ concluded that "while there is no reason to doubt [Mike F.]'s observation, the record does not establish a medical justification for [Plaintiff]'s decision to occasionally remain in bed" and provided no further analysis. (*Id*.)

The Court adopts its analysis above finding that the ALJ erred by discounting Plaintiff's symptom testimony, and finds that the ALJ erred for the same reasons in discounting the lay witness testimony regarding Plaintiff's similar limitations. *See Janet M. v. Comm'r Soc. Sec. Admin.*, No. 6:21-cv-00725-AR, 2023 WL 3318777, at *6 (D. Or. May 9, 2023) (noting that "the ALJ did not provide legally sufficient reasons to discount plaintiff's subjective symptom testimony" and "[t]herefore, the ALJ erred in failing to consider the lay witness statements"); *cf. Christopher K. v. Comm'r, Soc. Sec. Admin.*, 649 F. Supp. 3d 1041, 1050 (D. Or. Jan. 3, 2023) (explaining that the lay witness' "statements are substantially similar to Plaintiff's testimony[,]" "[t]he Court has already concluded the ALJ erred when she partially rejected Plaintiff's testimony because the ALJ failed to provide support for her opinion based on substantial evidence in the record[,]" and "[t]he Court also concludes on the same basis that the ALJ erred when she rejected" the lay witness' testimony).

## IV.    REMEDY

Plaintiff asks the Court to remand for further administrative proceedings or an immediate award of benefits. (Pl.'s Br. at 16; Pl.'s Reply Brief at 3-6, ECF No. 12.) The Commissioner responds that Plaintiff has failed to demonstrate that her case "meets all the demanding requirements for such a drastic remedy." (Def.'s Br. at 11.)

PAGE 20 – OPINION AND ORDER

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id*. (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id*. at 1021.

### B.    Analysis

The Court concludes that the credit-as-true standard is satisfied here and that remand for the payment of benefits is appropriate.

The Court concluded above that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony, Dr. Heidinger' medical opinion, and Plaintiff's partner's testimony. The record has been fully developed, including treatment notes spanning the relevant time period, opinions from several medical sources, and Plaintiff's testimony about the severity

and effects of her impairments, and further proceedings would serve no useful purpose.[4] *See* *Garrison*, 759 F.3d at 1021 ("Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis.") (citations omitted).

Further, if Plaintiff's symptom testimony and Dr. Heidinger's medical opinion are credited as true, the record reflects that Plaintiff would miss four or more days of work per month due to her impairments. (Tr. 41-42, 266, 273, 796.) The VE testified that a person missing more than one day of work per month on an ongoing basis "would[] rule out competitive employment." (*Id.* at 51.) As a result of the VE's testimony, the ALJ would be required to find Plaintiff disabled on remand. *See* *Garrison*, 759 F.3d at 1022 n.28 (explaining that "there is no need to develop the record or convene further administrative proceedings" where "the VE answered a question describing a hypothetical person with the RFC that the claimant would possess were the relevant opinion or testimony taken as true"). Finally, the Court does not have any serious doubt as to whether Plaintiff is disabled within the meaning of the Social Security Act.

For these reasons, the Court remands this case for the calculation and payment of benefits. *See, e.g.*, *Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at *3 (9th Cir. July 5, 2023) ("The Government argues that we should remand for further proceedings rather than

---

[4] The Commissioner did not identify any useful purpose that further proceedings would serve here. (*See generally* Def.'s Br.)

remand for an award of benefits. However, remand would serve no legitimate purpose . . . and permitting the Government to introduce additional evidence on remand would provide the Government with an unfair second opportunity to present its case. . . . We therefore remand to the district court with instructions to remand to the agency for an award of benefits.") (citations omitted); *Hoffschneider v. Kijakazi*, No. 18-15504, 2022 WL 3229989, at *3 (9th Cir. Aug. 10, 2022) ("Once the improperly discredited evidence is credited as true, the vocational expert's testimony forecloses a determination that [the claimant] can work. Because no 'serious doubt' remains that [the claimant] is disabled, there is nothing left to decide. We therefore reverse and remand with instructions to remand to the Commissioner for a calculation and award of benefits.") (citations omitted); *Varela v. Saul*, 827 F. App'x 713, 714-15 (9th Cir. 2020) (reversing district court opinion remanding for further proceedings and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled"); *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony . . . would be unable to perform competitive employment").

///

///

///

///

///

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and

REMANDS for the calculation and payment of benefits.

**IT IS SO ORDERED.**

DATED this 22nd day of October, 2025.

HON. STACIE F. BECKERMAN
United States Magistrate Judge